UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FADEEL SHUHAIBER, ) | |
| ) | |
| Plaintiff, ) | No. 1:18-CV-01301 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| TOM DART, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Fadeel Shuhaiber filed a complaint against Patricia Lassa, Jaime Crothers, Tynisha Clairy, and Sabrina Canchola for violations of his right to due process under the Fourteenth Amendment, 42 U.S.C. § 1983.[1] R. 132, Second Am. Compl. (SAC).[2] He alleges that when he was a pretrial detainee at Cook County Jail, he was denied necessary physical-therapy treatment and access to a wheelchair after suffering injuries in a physical altercation with another detainee. *Id.* ¶¶ 48–114. Lassa and Crothers are physical therapists at the Jail, SAC ¶¶ 5–6, Clairy is a medical doctor at Cermak Hospital, SAC ¶ 7, and Canchola is the Jail's coordinator of compliance under the Americans with Disability Act, SAC ¶ 8. The Defendants now move to

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 1331.
[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

dismiss all claims against them. R. 133, Mot. to Dismiss. For the reasons explained in this Opinion, the motion to dismiss is granted in part and denied in part.[3]

## I. Background

In considering the motion to dismiss, Shuhaiber's factual allegations must be accepted as true, and reasonable inferences made in his favor. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). In mid-October 2016, when Shuhaiber was a pretrial detainee in the Cook County Jail, he was "body-slammed" by another detainee and sustained serious injuries. SAC ¶¶ 11–12. As a result of these injuries, Shuhaiber was taken to Stroger Hospital, where he remained for two weeks. *Id.* ¶ 13. Shuhaiber received corrective surgeries to repair a dislocated right shoulder, a broken right upper arm, a dislocated right elbow, a broken left leg, and a broken left knee. *Id.* ¶ 14. Shuhaiber was then transferred to Schwab Rehabilitation Hospital, where he remained until he was discharged to Cermak Hospital in November 2016. *Id.* ¶¶ 20–25.

### A. Tynisha Clairy

While at Cermak Hospital, Doctor Tynisha Clairy wrote Shuhaiber a prescription for routine wheelchair usage at the hospital. *Id.* ¶ 88. This wheelchair prescription expired as soon as Shuhaiber left Cermak Hospital to return to his unit at the Jail. *Id.* ¶ 90. But the prescription did not account for the gap in time that Shuhaiber

---

[3]Although the operative pleading is the Seconded Amended Complaint, the prior versions of the complaint were filed *pro se*. The operative pleading is the first attorney-drafted complaint. *See* R. 1, R. 38.

2

would have to wait before being examined by another doctor to receive a new prescription for routine wheelchair use. *Id.* ¶ 94. Shuhaiber alleges that Dr. Clairy knew he would suffer in pain without this prescription. *Id.* ¶ 94. Four days after returning to his unit, Shuhaiber was prescribed a wheelchair for 24/7 use by a Dr. Glen Trammel. *Id.* ¶ 96. Because of the delay in seeing Dr. Trammel, Shuhaiber was without a wheelchair for four days, causing him to suffer from excruciating pain. *Id.* ¶ 97. Shuhaiber alleges that Dr. Clairy knew he would suffer from excruciating pain without the use of a wheelchair. *Id.* ¶ 93.

### B. Patricia Lassa & Jamie Crothers

As part of his recovery from the "serious and disabling" injuries, Shuhaiber was prescribed physical therapy in the Jail. SAC ¶¶ 27–28. In light of the severity of his injuries, physical therapy was necessary to regain strength and motion in the injured parts of his body. *Id.* ¶ 29. Shuhaiber began his physical therapy in November 2016. *Id.* ¶ 31. He was assigned two physical therapists, Patricia Lassa and Jamie Crothers (they focused on different injuries). *Id.* ¶ 33. Following the Jail's security protocols, Shuhaiber was not informed ahead of time about his physical therapy schedule. *Id.* ¶¶ 40–41. On the days that he was scheduled for physical therapy, jail officials would appear unannounced and command Shuhaiber to get ready for a trip to physical therapy. *Id.* ¶ 42. Jail officials were required to escort Shuhaiber to and from the appointment. *Id.* ¶ 43. At the conclusion of each physical therapy session, Shuhaiber would be informed by the physical therapists that a follow-up session was scheduled in the near future, but he was not given precise timing details. *Id.* ¶ 44.

Between November 2016 and August 2017, a total of 10 months, Shuhaiber attended nine physical therapy sessions. SAC ¶ 45. Cook County Department of Records reflect that Shuhaiber was scheduled for an additional 17 physical therapy sessions, which Shuhaiber did not receive because Jail officials did not inform him of the sessions and did not escort him to the sessions. *Id.* ¶¶ 49–50.

### C. Sabrina Canchola

In April 2017, Shuhaiber was transported to Bridgeview Courthouse in connection with the case for which he was being held as a pretrial detainee. SAC ¶ 100. The state court judge presiding over Shuhaiber's case entered an order commanding that "the Defendant [Shuhaiber] shall be allowed the use of a wheelchair on his court dates and while in custody." *Id.* ¶ 101; R. 146, Pl.'s Exh. A, April 27 Court Order. Shuhaiber met with Sabrina Canchola, the Jail's ADA compliance coordinator shortly after the order's entry and presented the April 27 Court Order to her, explaining his position that he was now entitled to the routine use of a wheelchair. SAC ¶ 103. Shuhaiber had multiple meetings with Canchola where he professed that position. *Id.* ¶ 109.

Despite these meetings, between April 2017 and August 2017, Shuhaiber was "never given a medical order by the jail for routine use of a wheelchair." SAC ¶ 105. Shuhaiber interprets the April 27 Court Order to impose no limitation on the use of and entitlement to a wheelchair, effectively granting him 24/7 use. *Id.* ¶ 111. Based on this interpretation Shuhaiber alleges that Canchola was deliberately indifferent to the Court Order and made no attempt to bring the Court Order to the attention of

4

Jail personnel who could implement the Court Order and provide the wheelchair or alternatively, to reach out to the Jail's lawyers for guidance on the meaning and scope of the April 27 Court Order. *Id.* ¶¶ 112–113.

Shuhaiber filed this lawsuit *pro se* in February 2018. R. 1, Original Complaint. Shuhaiber then filed a First Amended Complaint in January 2019. R. 38, FAC. In December 2019, Shuhaiber was assigned an attorney by the court. R. 85. Counsel later filed this Second Amended Complaint in May 2021. SAC.

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up)[4]. The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police*

---

[4] This opinion uses (cleaned up) to indicated that internal quotations marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

*of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

### III. Analysis

Shuhaiber brings four civil rights claims under Section 1983, all asserting violations of his right to adequate medical care under the Due Process Clause of the Fourteenth Amendment. Counts 1 and 2 allege inadequate medical care against his physical therapists, Lassa (Count 1) and Crothers (Count 2). SAC ¶¶ 59–86. Count 3 alleges that Dr. Clairy provided inadequate medical care by failing to ensure a prescription for wheelchair use after her prescription expired. SAC ¶¶ 87–98. Count 4 alleges that the Jail's ADA Compliance Director, Sabrina Canchola, also failed to provided adequate medical care by ignoring Shuhaiber's need for a wheelchair. SAC ¶¶ 99–114.

Section 1983 provides that "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected … other persons within the jurisdiction thereof to the deprivation of any rights … secured by the Constitution … shall be liable to the party injured." 42 U.S.C. § 1983. Under the Due Process Clause of the Fourteenth Amendment, a pretrial

6

detainee is entitled to objectively reasonable medical care while in pretrial detention. *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020) (cleaned up). It is the plaintiff's burden to successfully allege objective unreasonableness of medical care, which requires two elements. *Id.*[5] First, the detainee must adequately allege that the jail official acted purposefully, knowingly, or recklessly when considering the consequences of the response to the medical condition at issue. *Id.* Second, the detainee must adequately allege that the challenged conduct was objectively unreasonable in light of the totality of the relevant facts and circumstances. *Id.*

### A. Physical Therapists Lassa & Crothers (Counts 1 & 2)

First, Shuhaiber alleges a medical-care claim against two physical therapists, Patricia Lassa and Jamie Crothers. SAC ¶¶ 59–86. Lassa and Crothers are Cook County employees and are responsible for providing physical therapy services in the Jail (so no one disputes that they are acting under color of law for § 1983 purposes). SAC ¶¶ 5–6.[6] The physical therapists argue that the claims against them should be dismissed because there are no allegations that they were personally involved or caused the alleged deprivations of Shuhaiber's rights. Mot. to Dismiss at 7. Shuhaiber, on the other hand, alleges that Lassa and Crothers acted in an objectively

---

[5]Both parties agree that the objective unreasonableness standard is appropriate in this case. Mot. to Dismiss at 6 n.1; R. 146, Pl.'s Br. at 3.

[6]Government officials can be sued in their official capacity or individual capacity, or both. Although Shuhaiber does not explicitly state in what capacity he is suing the physical therapists in Counts 1 and 2, it is clear that the allegations target the therapists individually, rather than the government entity itself. *See Kentucky v. Graham*, 473 U.S. 159 (1985) (looking at the course of proceedings to determine whether a § 1983 suit was an individual or an official capacity suit).

7

unreasonable manner with respect to Shuhaiber's medical needs because they did not attempt to learn why their patient was absent from his scheduled appointments. R. 146, Pl.'s Br. at 6. Shuhaiber asserts that because of his 17 missed appointments and the inaction of the physical therapists, he suffered injuries. SAC ¶¶ 72, 86.

These allegations, however, fail to adequately explain how the physical therapists were *personally* involved in the misconduct or *personally* caused Shuhaiber's injuries. As the Defendants correctly point out, under 42 U.S.C. § 1983, a person can only be held liable for a constitutional violation that he or she *personally* caused. *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005). There is no vicarious liability under § 1983. *Id.* In order to hold an individual defendant liable under § 1983 for a constitutional violation, the plaintiff must adequately allege that the defendant was personally responsible. *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017).

Shuhaiber argues that the physical therapists took the easy way out by just rescheduling his appointments. Pl.'s Br. at 6. But there is no allegation, grounded in a Jail policy or other requirement, that it was the physical therapists' duty or responsibility to question security protocols or second-guess the Jail staff's judgment about when Shuhaiber would be notified and brought to his appointments. *See Henry v. Hulett*, 969 F.3d 769, 783 (7th Cir. 2020) (cleaned up) (holding that prison administrators are given "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve the internal order and discipline and to maintain institutional security"). The physical therapists are medical-care providers and there is no reason to think, on the current pleading, that they

8

could dictate the security policies set by the Sheriff's Office. *Id*. Just as jail officials ordinarily defer to the judgment of medical professionals, medical professionals generally must defer to the professional expertise of security officials when it comes to matters of jail security. *Florence v. Board of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 328 (2012) (cleaned up) (explaining that the task of determining whether a policy is reasonably related to a legitimate security interest is "peculiarly within the province and professional expertise of corrections officials"); *Leiser v. Kloth*, 933 F.3d 696, 706 (7th Cir. 2019) (holding that non-medical professionals are encouraged to rely on the professional judgment of medical professionals).

Separately, Shuhaiber alleges that the physical therapists' inaction was a violation of the American Physical Therapy Association's Guide for Professional Conduct. Pl.'s Br. at 6. As the Defendants note, however, § 1983 "protects plaintiffs from constitutional violations, not violations of state law" or, in this case, a code of conduct or ethics of a professional organization. Def.'s Br. at 5; *see Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003). It is true that professional norms might very well inform the objective reasonableness of the medical care provided (or not provided) in common law malpractice cases, and might even be relevant to assessing the care in a custodial setting. But the professional norms cited here do not generally speak to what the Due Process Clause demands of physical therapists operating in a jail, not to mention what deference physical therapists owe to security officers when deciding how to move detainees in a dangerous setting like the Cook County Jail. Shuhaiber's reliance on the professional organization's guideline is rejected.

Shuhaiber also fails to allege any *intentional* (or even reckless) action or inaction by the therapists. *See County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *see McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 886 (7th Cir. 2018). For example, Shuhaiber does not allege that either of the therapists took any affirmative action to personally prevent him from attending any appointment, refused to work with him during his scheduled appointments, or failed to reschedule him when an appointment was missed. SAC ¶¶ 29–34,44. As currently pled, then, there is no sufficient claim against the physical therapists in Count 1. For now, the dismissal is without prejudice, given that the Second Amended Complaint is the first lawyer-drafted version of the complaint. It is possible (though the Court is skeptical) that discovery will uncover facts that would allow Shuhaiber to seek leave to amend the complaint again, this time alleging facts about the therapists' authority. If the Rule 16(b) deadline comes and goes without adding the therapists back into the case, then the dismissal will automatically convert to a dismissal with prejudice.

### B. Dr. Clairy (Count 3)

Next, Shuhaiber alleges a medical-care claim against Dr. Tynisha Clairy, the doctor who treated Shuhaiber at Cermak Hospital. SAC ¶¶ 87–98. The claim arises from a wheelchair prescription that Clairy wrote for Shuhaiber while he was under her care. *Id.* ¶¶ 88–90. Specifically, Shuhaiber argues that Clairy knew that the wheelchair prescription would not cover Shuhaiber for the interim period between his discharge from Cermak Hospital and whenever he would be seen by another

10

doctor, and that he would suffer excruciating pain without the use of a wheelchair during that time. *Id.* ¶¶ 92–94. Clairy argues that those allegations are insufficient to state a medical-care claim. Mot. to Dismiss at 6–9.[7]

Generally, it is true that a detainee may not demand specific medical care, so long as whatever care was provided was sufficient. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("The constitution is not a medical code that mandates specific medical treatment."). Here, however, Shuhaiber is not demanding specific medical treatment merely because he had a desired form of treatment—instead, a wheelchair was *already* prescribed as part of his treatment. Shuhaiber's claim is about the pain that he needlessly suffered due to Clairy's alleged indifference to his mobility when he had to wait for a second prescription for continued wheelchair access. Although "[m]ore than negligence or even gross negligence is required for a viable Section 1983 claim for inadequate medical care," *James*, 959 F.3d at 318, it is plausible to infer that it was Clairy's responsibility to ensure that the prescription would carry Shuhaiber over until he was returned to his Jail unit and able to obtain another prescription. Whether or not Clairy behaved purposefully or recklessly in not writing a longer prescription is an issue that must be left for discovery and cannot be resolved on a motion to dismiss. Discovery might also reveal that Clairy had limited prescription authority

---

[7]Clairy also argues that the allegations in the Second Amended Complaint conflict with the First Amended Complaint, but the newer pleading simply presents the claim against Clairy with more specificity, rather than contradict the prior pleading.

11

in the Jail unit itself; again, however, the allegations right now must be read in the light most favorable to Shuhaiber. Although it is true that a doctor is free to make her own "independent medical determinations as to the necessity of certain treatments …[,]" these determinations are still subject to the objective-reasonableness standard. *See Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1074 (7th Cir. 2012). So the decision on the prescription's length is a matter for discovery.

Moving on from the standard of care, Dr. Clairy also argues that Shuhaiber failed to allege that her actions caused him to suffer an injury. Mot. to Dismiss at 11–12. That argument is meritless. "To show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also provide evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties v. Carter*, 836 F.3d 722, 730–731. It is perfectly plausible that, given Shuhaiber's then-recent corrective surgeries and early stage of recovery, forcing Shuhaiber to move around without a wheelchair would exacerbate his injuries and unnecessarily prolong his pain. The pain and suffering Shuhaiber experienced were plausibly a result of Dr. Clairy's actions, and not merely the result of residual pain from the surgeries.

In sum, contrary to the defense argument, Shuhaiber has not pled himself out of court on this claim. Mot. to Dismiss at 13–14. Count 3 against Clairy remains intact.

### C. ADA Compliance Director Canchola (Count 4)

Finally, Shuhaiber alleged that the Jail's ADA Compliance Director, Sabrina Canchola, also ignored his medical needs in violation of the Due Process Clause. SAC

¶¶ 99–114. As Shuhaiber tells it, he met with Canchola multiple times, each time insisting that he needed 24/7 use of a wheelchair while in the Jail, relying on the April 27 Court Order. *Id.* ¶ 103. Despite his mobility problems and the Court Order, between April 27 and August 7, 2017, Shuhaiber did not receive routine access to a wheelchair. *Id.* ¶ 105.

Shuhaiber alleges that Canchola had the authority and duty to demand that prison staff comply with the Court Order, and that by failing to order a wheelchair for him, Canchola ignored his medical needs. *Id.* ¶ 112–113. Canchola argues that Shuhaiber has failed to adequately state a claim against her because she was not a medical-staff member and was limited in her authority to enforce a state court order. Def.'s Br. at 8.

Shuhaiber does not allege anything other than a conclusion that Canchola had the authority to direct Cook County Sheriff Officers to provide him with a wheelchair. Canchola is *not* a member of the medical staff. SAC ¶ 8. As a non-medical staff member, Canchola is generally permitted to defer to the medical decisions of medical personnel. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (holding that police officers were not responsible for administering medical care and were entitled to defer to the judgment of health professionals); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (holding that if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands). The same goes for deference to security officials. *Leiser*, 933 F.3d at 706.

It might be that discovery will uncover a basis to allege a *fact* (rather than a conclusion) about Canchola's authority to order Jail officials to provide Shuhaiber with routine access to a wheelchair. If he uncovers facts like that, then he may move to amend the complaint again (given that the Second Amended Complaint is the first lawyer-drafted version of the claims). If the Rule 16(b) deadline to add parties or to amend pleadings expires without re-inserting Canchola into the case, then the dismissal will automatically convert to a dismissal with prejudice. But for now, the claim against Canchola is dismissed without prejudice.

## IV. Conclusion

The motion to dismiss is granted in part and denied in part. The claims against the physical therapists (Counts 1 and 2) and the claim against the ADA Compliance Director (Count 4) are dismissed, for now without prejudice. The medical-care claim against Clairy (Count 3) remains intact. The parties shall confer and submit a joint status report with a proposed discovery schedule. The status report is due by April 8, 2022. The tracking status hearing of April 8, 2022, is reset to April 15, 2022, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the Court will set a discovery schedule based on the status report.

ENTERED:

       s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 27, 2022

14